IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

GARY NEWBY,                          )
                                     )
          Plaintiff,                 )
                                     )
v.                                   )          CV-00-TMP-1619-S
                                     )
MRS. STRATTON'S SALADS, INC.,        )
                                     )
          Defendant.                 )

**ENTERED**

**FEB 15 2002**

### MEMORANDUM OPINION

This matter is before the court on the defendant's motion for summary judgment filed May 14, 2001, and supported by a brief and evidence.  On May 24, 2001, plaintiff filed a motion to extend time to file a response in opposition to the motion for summary judgment.  On May 31, 2001, the court entered an order granting the motion for extension, making plaintiff's response due no later than June 16, 2001.  On June 15, 2001 the plaintiff served and filed[1] a

---

[1]     As noted in the court's order dated January 23, 2002, the court record did not contain any evidence that the brief in opposition was filed, although it was clear from defendant's reply that some opposition had been served.  Accordingly, the court directed plaintiff to deliver a stamped copy to chambers by February 1, 2002.  On that date, plaintiff's counsel brought the original stamped brief to the Clerk's office.  Thus, it appears plaintiff's counsel had the brief stamped "filed" but mistakenly took the original with her on June 15, 2001.  In any event, defendant has not objected to the "re-filing," and the court treats the brief as timely filed and GRANTS plaintiff's motion to enter the response into the record (court document #34).

35

brief in opposition. On July 2, 2001, defendant filed a reply brief that references and rebuts the plaintiff's brief in opposition to summary judgment. The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c); accordingly, the court enters this memorandum opinion.

## I.  FACTS

The plaintiff, Gary Newby, a black male, worked for a temporary agency assigned to work as a truck driver for the defendant, Mrs. Stratton's Salads ("Mrs. Stratton's"). In December of 1997, Mrs. Stratton's offered Newby a full-time position as a relay driver. He worked for Mrs. Stratton's until October of 1998. The company employed both relay drivers, who made deliveries in tractor/trailer rigs to out-of-state warehouses and customers, and local drivers, who made deliveries to nearby distribution centers, such as Gadsden.

Patricia Azlin was Mrs. Stratton's Director of Human Resources/Safety at all times relevant to this action. She made the decision to hire Newby in 1997.[2] As part of the hiring

---

[2]     Although Newby claims he was hired by David Bray and Chuck Miller, Newby has not established that he has any personal knowledge of who made the hiring decision - only that he knows who talked to him about applying for the job.

2

process, Azlin requested and received a copy of Newby's motor vehicle record ("MVR"). The MVR recorded three moving violations. On December 10 1997, Azlin faxed a copy of the MVR to Mrs. Stratton's insurance broker to determine whether Newby could be covered by Mrs. Stratton's insurance on a probationary basis. She pointed out in the fax cover sheet that Newby's third offense occurred more than three years ago.

On or about December 12, 1997, Newby was hired as a relay driver and was placed on a two-year probation.[3] His direct supervisor until September 1998 was Rob Buckman. Newby also was supervised by David Bray, who served at times as tranportation supervisor and lead driver. Newby drove tractor/trailer rigs for

---

[3]     There is much dispute over whether Newby was told he was placed on probation, and the letter defendant offers as evidence that Newby was informed does raise questions, as the copy of the letter is dated 10 days after the signature of the plaintiff that appears on a separate page.  Furthermore, Azlin's declaration discusses the letter as being dated October 22, 1997, rather than December 22, 1997.  Newby admits, however, that he received a letter telling him about his salary.  He further admits that David Bray and Chuck Miller, two management employees, told him that his salary would be $425 a week, and that "after the probationary period, it would go up to $460." Viewing the facts in the light most favorable to the nonmovant, the court accepts as true that Newby was not informed of the specific facts regarding his probation and was not aware that his previous driving record was an issue in his employment.  However, the court also accepts as true the undisputed evidence that Azlin hired Newby as a probationary employee and intended for his employment status to remain probationary for two years, even if that fact was not communicated to Newby.

Mrs. Stratton's until June 1998. In early February of 1998, Newby received a warning for speeding in Brantley, Alabama. He was reported to be driving 73 mph in a 55 mph zone. Newby complained to Bray that the speedometer on the company vehicle did not work.[4] Bray told Newby that he should drive more slowly until the speedometer was fixed or until Newby was given a different truck. On February 16, 1998, Newby was given a ticket for speeding in Mississippi, and his speed was recorded as 74 mph in a 55 mph zone. Azlin told Newby that he would be terminated if the violation appeared on his MVR. Newby hired an attorney to contest the violation, and it was removed from, or never recorded onto, his MVR.[5] Thereafter, Azlin sent Newby a letter that stated:

> This is to recap our phone conversation on March 24, 1998 concerning to [sic] speeding ticket dated 2/16/98. You stated that you paid the court costs of this ticket and signed a non-judicial process. You explained that this

---

[4] Although Newby alleges that white drivers were given trucks with functioning speedometers and he was given the truck with the defective speedometer, there is no evidence to support that claim. The only fact before the court is that Newby's speedometer was not working in early February of 1998, and that it was not repaired as of February 16, 1998. This sole fact cannot provide evidence to support a claim of disparate treatment.

[5] Azlin disputes this allegation, and says she worked with him to have the ticket removed from his record. The court, however, views Newby's allegations as true for purposes of the instant motion.

means the ticket will not go against your driving record.
As I told you over the phone I need documentation to this
effect.  I must have documentation from the court stating
that the speeding ticket dated 2/16/98 will not go on
your driving record or at least not in a capacity to give
you any points against your record.

Newby denies he received any communications from Azlin regarding

the ticket, but admits that he complied with the request by

supplying the necessary documentation.  He remained employed by

Mrs. Stratton's as a relay driver.

On March 14, 1998, Newby was involved in a "fender-bender" in

a store parking lot while driving his personal vehicle.  Bray

learned of the accident when he received a phone call from the

other driver involved in the accident.  That driver told Bray that

Newby was at fault and should pay for the repairs.  The accident

was recorded on his MVR.  Newby told Bray that he would handle the

matter, and Bray did not report the accident to Azlin, as Mrs.

Stratton's policy required him to do.

In June 1998, Mrs. Stratton's eliminated one relay driver

position due to a business downturn.  Newby was the relay driver

with the least seniority.  Instead of terminating Newby, Azlin

created a position in the warehouse and kept Newby employed.  He

continued to drive trucks on local runs, rather than to out-of-

state destinations, and was assigned to other warehouse jobs.

On or about August 5, 1998, Newby was injured while working in the warehouse with an electric pallet jack. He testified that he saw the doctor to whom Mrs. Stratton's sent employees who were injured on the job. He alleges that the doctor told him he was restricted to "no commercial driving, no lifting more than ten pounds, or something like that to that effect." Newby does not allege that on August 5 he supplied Mrs. Stratton's with a doctor's report or that he specifically informed any supervisor of his restrictions, or that he requested that he be assigned to light duty. On August 6 and/or 7, 1998, Mrs. Stratton's requested that Newby drive to Gadsden on two local runs, which Newby did. Mrs. Stratton's sent another employee with Newby to assist in lifting and unloading. The only document in the record that reflects any doctor's restrictions on Newby's duties is a record from Carraway Occupation Health Center, apparently produced from Newby's personnel file. That record indicates that a doctor saw Newby on a "follow-up" on August 7, 1998, and reported that Newby could return to work immediately, with lifting and pulling restrictions of ten pounds and restrictions on commercial driving. The doctor further reported that Newby could return to work without restriction on August 10, 1998. The only work assignments about which Newby complains are the August 6 and/or 7 runs to Gadsden.

6

Throughout August and September, Newby continued to work as a local driver and to perform other warehouse duties.  On September 30, 1998, the relay driver position was re-opened, and Newby was again returned to his duties as relay driver.  Newby was unaware of any formal change in his position or job description during his tenure at Mrs. Stratton's; he claims his supervisors simply assigned him to warehouse duties "when work was slow."

Mrs. Stratton's had a policy of checking the MVRs of probationary drivers approximately every six months.[6]  In September of 1998, Azlin requested and received an updated copy of Newby's MVR.  From the MVR, Azlin learned Newby had been involved in the March accident.  Azlin directed Newby's supervisor, Rob Buckman, to discuss the accident with Newby and to tell Newby that the updated MVR would be submitted to the insurance company.  Buckman failed to discuss the matter with Newby, and Buckman was terminated for dereliction of his duties in late September.

On October 2, 1998, Mrs. Stratton's received a telephone call from a woman who identified herself as Lanell Pigg, an employee of Berry Plastics, which is a customer of Mrs. Stratton's located in North Carolina.  Pigg told Mrs. Stratton's that the driver who made

---

[6]     The MVRs of non-probationary drivers were checked annually.

the delivery to Berry Plastics on October 2, 1998, had pulled out in front of an oncoming car and had forced the car off the road. Newby made the only delivery to Berry Plastics during the week that the complaint was received.

Mrs. Stratton's policy was to provide the MVR to the insurer whenever a driver had three violations or "incidents" within three years.  After receiving the complaint, Azlin sent Newby's updated MVR to the insurance broker, and the broker told her he would check with the insurance underwriter.  The broker did not return her call for several days, and on October 8 or 9, 1998, Azlin again called the broker to determine the insurance status of Newby.  The insurer informed Azlin that Newby should be placed on "non-driving status."

On October 12, 1998, Newby injured his arm while out of town on a delivery.  He telephoned Mrs. Stratton's to report the injury, and left a message because the office was closed.[7]  Azlin decided to terminate Newby because of his driving record.  She told the warehouse manager of her decision.  The manager informed Newby on October 13, 1998, that he was terminated.  Azlin denies knowing of Newby's October injury until after she decided to terminate him.

---

[7]     Newby does not specify whose extension or whose telephone he called to leave the information.  Azlin asserts that she was not aware of the injury until after she made the decision to terminate Newby.

After Newby was fired, his route as a relay driver was assumed by Bray, a black male, until a new driver was hired.  On January 14, 1999, Azlin hired Daniel Graham, a black male, to replace Newby.

On October 16, 1998, Newby filed a complaint of discrimination with the EEOC.  On November 1, 1999, the EEOC dismissed the charge. The complaint commencing this action was filed on June 13, 2000, beyond the deadline for filing a Title VII action.  Accordingly, plaintiff asserts race discrimination claims pursuant to 42 U.S.C. § 1981, asserting that Mrs. Stratton's discriminated against him because of his race by putting him on probation when white drivers were not placed on probation, by refusing to grant him "light duty" after his August injury, and by firing him in October.

The defendant moved for summary judgment on all of Newby's claims, asserting that the plaintiff failed to state a *prima facie* case of race discrimination, and failed to demonstrate that the non-discriminatory reasons given for plaintiff's job status, treatment on the job, or termination were pretextual.

## II. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." Id. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there

10

is a genuine issue for trial.'"  Id. at 324 (quoting Fed. R. Civ.
P. 56(e)).  The nonmoving party need not present evidence in a form
necessary for admission at trial; however, he may not merely rest
on his pleadings.  Celotex, 477 U.S. at 324.  "[T]he plain language
of Rule 56(c) mandates the entry of summary judgment, after
adequate time for discovery and upon motion, against a party who
fails to make a showing sufficient to establish the existence of an
element essential to that party's case, and on which that party
will bear the burden of proof at trial."  Id. at 322.

    After the plaintiff has properly responded to a proper motion
for summary judgment, the court must grant the motion if there is
no genuine issue of material fact, and the moving party is entitled
to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The
substantive law will identify which facts are material and which
are irrelevant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
(1986).  A dispute is genuine "if the evidence is such that a
reasonable jury could return a verdict for the nonmoving party."
Id. at 248.  "[T]he judge's function is not himself to weigh the
evidence and determine the truth of the matter but to determine
whether there is a genuine issue for trial."  Id. at 249.  His
guide is the same standard necessary to direct a verdict: "whether
the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. Anderson, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

12

## III.  DISCUSSION

### A.  § 1981 Race Discrimination Claims

Plaintiff asserts race discrimination claims pursuant to 42 U.S.C. § 1981, which provides that "all citizens shall have the same right to 'make and enforce contracts.'"  See Brown v. American Honda Motor Co., 939 F.2d 946, 949 (11th Cir. 1991).  The purpose of the statute is "to remove the impediment of discrimination from a minority citizen's ability to participate fully and equally in the marketplace."  Id., citing Patterson v. McLean Credit Union, 491 U.S. 164, 176, 109 S. Ct. 2363, 2372, 105 L. Ed. 2d 132, 150 (1989).  To prevail on any § 1981 claims, a plaintiff must prove intentional discrimination.  Brown, 939 at 949.

Although plaintiff's employment discrimination claims are set forth exclusively as race claims pursuant to § 1981, and not as Title VII claims under 42 U.S.C. 2000e, the same McDonnell Douglas scheme for allocation of burdens and analysis of proof used in evaluating Title VII claims is applied.  See Turnes v. AmSouth Bank, 36 F.3d 1057, 1060 (11th Cir. 1994), citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).  Accordingly, the disparate treatment alleged by Newby is examined, infra, applying the framework of McDonnell Douglas.

13

In order to overcome a defendant's properly supported motion for summary judgment, the plaintiff first must demonstrate that he has satisfied the minimal requirements of a *prima facie* case. See Howard v. BP Oil Co., 32 F.3d 520, 525 (11th Cir. 1994). In this case, to show disparate treatment in that he was hired on a probationary basis, Newby first must demonstrate that the action violates § 1981 by showing that placing him on probation in some way denied him the "enjoyment of all benefits, privileges, terms and conditions" of his contractual relationship with Mrs. Stratton's. See 42 U.S.C. § 1981(b). Next, Newby must make a *prima facie* showing that: (1) he is black; (2) he was qualified for the position of relay driver; (3) he was hired on a probationary status; and (4) similarly situated non-black applicants were not placed on probation. To demonstrate disparate treatment as to his termination, plaintiff must additionally offer evidence that (1) he was fired, and (2) he was replaced by a non-black employee. See Howard, 32 F.3d at 524. To show disparate treatment in the awarding of "light duty," Newby must offer proof that: (2) he was qualified for light duty; (3) he requested light duty and that request was denied; and (4) light duty was given to similarly situated non-black employees. Id.

14

### 1.  Probation Claim

Newby asserts that he a victim of racial discrimination in that he was hired as a probationary employee and similarly situated non-black employees were not placed on probation when hired.  The court first notes that all employees in Alabama, and all employees of the defendant who are referenced by the plaintiff, are at-will employees who may be fired at any time for any reason other than a reason that is unlawfully discriminatory.  <u>See, e.g.</u>, <u>Carter v. Marc Steel Co.</u>, 2001 WL 1637475, ___ So. 2d ___ (Ala. Civ. App. Dec. 21, 2001).  Accordingly, the label of "probationary" did not detrimentally affect the terms or conditions of Newby's employment as an at-will employee and, therefore, does not give rise to a claim of race discrimination pursuant to § 1981.

Even assuming that placing the plaintiff on probation could be construed as conduct giving rise to a § 1981 claim, the claim in this case is without merit for two reasons: (1) plaintiff has failed to prove his *prima facie* case, and (2)  Mrs. Stratton's has proffered a legitimate, nondiscriminatory reason why Newby was placed on probation and he has not shown that the reason is a pretext.  Although the court generally will not resolve factual questions concerning discriminatory intent when deciding summary judgment motions in § 1981 cases, it is possible for a defendant to

15

present such strong evidence of nondiscriminatory reasons for its actions that summary judgment may be warranted in defendant's favor.  See Brown, 939 F.2d at 950. Once the employer meets its burden of articulating a non-discriminatory reason, the burden shifts back to the plaintiff to show that the reason is either not worthy of belief or that, in light of all the evidence, a discriminatory reason more likely motivated the decision than the proferred reason. Standard v. A.B.E.L. Servs. Inc., 161 F.3d 1318, 1331-33 (11th Cir. 1998), citing Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997), cert. denied, 118 S. Ct. 685, 139 L. Ed. 2d 632 (1998).

In this case, Mrs. Stratton's has asserted that Newby was placed on probation because he had three moving violations on his MVR at the time of hire.  Because Mrs. Stratton's has offered a nondiscriminatory reason for the employment decision, Newby must, in order to overcome the motion for summary judgment, demonstrate by competent, admissible evidence that Mrs. Stratton's non-discriminatory reason is merely a pretext.  He must show not only that the articulated reason is false, but also that Mrs. Stratton's true reason for placing him on probation was discriminatory.  See Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1228 (11th Cir. 1993). It is not the duty of this court to evaluate whether the decision

16

was fair or wise; employers are free to make unfair or unwise employment decisions so long as they do not violate anti-discrimination statutes.  See Elrod v. Sears, Roebuck and Co., 939 F.2d 1466, 1470 (11th Cir. 1991).

In this case, Newby alleges that neither Rhonda Hackney nor Ivan Bentley was placed on probation when hired.  Newby does not provide any evidence relating to Bentley's driving record, and Mrs. Stratton's has stated that Bentley was not employed as a driver. Accordingly, any comparison to Bentley would be irrelevant. Hackney, on the other hand, also was a relay driver hired by Mrs. Stratton's in 1997.  The only MVR offered as evidence that predates her hiring shows only one accident, and it occurred in 1994, three years before she was hired by Mrs. Stratton's.  For this reason, she was not similarly situated to Newby, whose MVR included three moving violations when he was hired, one from earlier in 1997, one from 1996, and the other from 1992.

It should also be noted that Mrs. Stratton's approached Newby about the relay driver position.  It is not reasonable to assume that Mrs. Stratton's both wanted to hire Newby and wanted to discriminate against him because he was black.  In sum, no fact in evidence logically calls into question the credibility of Mrs. Stratton's articulated nondiscriminatory reason.  The plaintiff's

17

unsupported conjecture is not sufficient to overcome the defendant's well supported motion for summary judgment. The court's job is to consider whether the evidence "presents a sufficient disagreement to require submission to a jury." Combs, 106 F.3d at 1526. The court finds little or no support for a finding that the reason is a pretext. Furthermore, in light of the complete absence of evidence rebutting the defendant's contention that it hired Newby as a probationary employee because of the violations recorded on his MVR, the evidence is so one-sided that the defendant must prevail. Accordingly, the motion for summary judgment as to plaintiff's probation claim is due to be granted.

### 2. Termination Claim

Newby also alleges that he was terminated from Mrs. Stratton's because of his race. Mrs. Stratton's contends that it fired Newby because he became uninsurable under Mrs. Stratton's policy. Mrs. Stratton's supports this argument with the MVR showing Newby's violations and accidents, and the fax from the insurer indicating that Newby should be placed on non-driving status. It is undisputed that Newby was hired as a relay driver,[8] and that he did

---

[8] The court notes that Newby was hired and fired by the same decision-maker, Patricia Azlin. This fact further suggests that there was no racial animus behind the termination decision.

not meet the company's criteria for driving when he was terminated.[9]   Just because Mrs. Stratton's had attempted to find other work for Newby by giving him short hauls and warehouse duties when the long-distance hauls were no longer needed does not require Mrs. Stratton's to create a new job for Newby because he was no longer qualified for the driving position.  Accordingly, Newby has not proven the second element of a *prima facie* case relating to his termination.

Newby also has failed to prove the final element - that he was replaced by a non-black driver.  To the contrary, Mrs. Stratton's placed Bray, a black male, into Newby's position temporarily, and ultimately hired a new employee, who also was a black male. Accordingly, Newby has failed to satisfy the minimal requirements of the *prima facie* claim relating to his termination, and defendant's motion for summary judgment is due to be granted as to that claim.

---

[9]   Plaintiff makes the argument that his driving record was unchanged between the time he was hired and the time he was fired.  However, that assertion clearly misstates the evidence, which shows that the March 1998 accident was included on the MVR, and that Mrs. Stratton's also had knowledge of two incidents of speeding and one allegation of reckless driving.  In any event, Mrs. Stratton's clearly relied upon the MVR not solely for the facts asserted therein, but as evidence of whether a driver could be covered by the company's insurance carrier.  Accordingly, plaintiff's argument is without merit.

### 3. Light Duty Claim

Newby asserts that as a result of his August 5, 1998, accident, he should have been given "light duty" on August 6 and 7, and that he was instead assigned to make deliveries to Gadsden. First, the court notes that defendant argues that denial of light duty does not constitute a claim of discrimination because it is not the type of "tangible employment action" cognizable under Title VII. Assuming, without deciding, that the denial of light duty is actionable under § 1981, the evidence is insufficient to overcome defendant's motion. Other than Newby's bare assertions that he saw the doctor on August 5 and was told to work under restrictions at that time, there is no evidence that Newby's injury required light duty on those dates. The only evidence submitted by plaintiff indicates that he saw a doctor on August 7, 1998, which was a Friday, and that he was released to work without restrictions as of August 10, 1999, which was the following Monday. There is no evidence that Newby received doctor's instructions before August 7, except for a notation on the August 7 report that indicates the visit was a "follow-up."

Even assuming Newby did visit the doctor on August 5 and was then told to work light duty, there is no evidence in the record that Newby communicated that instruction to Mrs. Stratton's, or

that Newby requested Mrs. Stratton's to assign Newby to light duty
on August 5.    The affidavit of Bray indicates that Newby was
allowed to work light duty "for a few days in August 1998" and that
during that time a supervisor asked Newby if he would make an
emergency run to Gadsden.    According to Bray, Newby agreed to go,
and Mrs. Stratton's assigned another employee to go with him to do
the lifting and unloading work.    Newby does not contradict Bray's
account of the Gadsden trips.    Moreover, even if Newby was asked to
work outside of his restrictions and Hackney was not, Newby's claim
pursuant to § 1981 is viable only if the treatment was intentional
discrimination on account of Newby's race.    Viewing the totality of
the circumstances, there is absolutely no evidence that any of Mrs.
Stratton's actions were motivated by racial animus.[10]    Accordingly,
the motion for summary judgment of Newby's claim relating to light
duty is due to be granted.

---

[10]    Newby's only "evidence" that any supervisor at Mrs.
Stratton's ever engaged in any conduct that exhibited any racial
animus of any kind is hearsay: that Newby "heard" from a third
party that Chuck Miller had told a racial joke, and that he
"heard" that "someone" said Newby should "get his black ass" in
the truck.    Even if such allegations were admissible, they are
isolated incidents and are insufficient to support a conclusion
that the Mrs. Stratton's conduct in (1) hiring Newby as a
probationary employee, (2) requesting that Newby work outside of
light duty on two days, or (3) firing Newby was discriminatory.

### B.  State Law Claims

Plaintiff also sets forth in his complain claims of negligent retention or supervision and outrage.[11]  Plaintiff fails to allege, must less offer evidence to support, any claim of negligent supervision or retention.  Furthermore, where the discrimination claim fails, so must the derivative negligent retention claim.  <u>See</u> <u>Levesque v. Regional Med. Ctr. Bd.</u>, 612 So. 2d 445, 449 n.10 (Ala. 1993).  In addition, the conduct complained of by plaintiff, even if supported by evidence and even if sufficient to survive the summary judgment process, is not so "extreme and outrageous" as to warrant consideration under Alabama's strict application of the law of outrage.  <u>See</u> <u>American Road Services v. Inmon</u>, 394 So. 2d 361 (Ala. 1980).  Accordingly, summary judgment in favor of the defendant is due to be granted as to all of the state law claims set forth in the complaint.

---

[11]    Plaintiff also sets out a claim for "negligent and intentional infliction of emotional distress."  The court first notes that Alabama does not recognize such a claim based on negligent conduct, and that any claim for emotional distress based on intentional conduct is the same claim under Alabama law as a claim for outrage.

22

## IV. CONCLUSION

Based on the foregoing facts and legal conclusions, defendant has demonstrated that there exists no genuine issue of material fact as to any of plaintiff's race discrimination claims brought pursuant to § 1981. Accordingly, the defendant's motion for summary judgment is due to be granted. A separate order will be entered in accordance with the findings set forth herein.

DATED this 14th day of February, 2002.

T. MICHAEL PUTNAM
CHIEF MAGISTRATE JUDGE